**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

|  |  |
|---|---|
| DCC GREEN RIVER, LLC,<br><br>*Plaintiff,*<br><br>-versus-<br><br>M/V STARFLEET GUARDIAN, bearing Official No. 1257515, her engines, tackle, furniture, apparel, appurtenances, etc., *in rem*; M/V STARFLEET VIKING, bearing Official No. 1219235, her engines, tackle, furniture, apparel, appurtenances, etc., *in rem*; M/V STARFLEET PATRIOT, bearing Official No. 1123380, her engines, tackle, furniture, apparel, appurtenances, etc., *in rem*; STARFLEET MARINE TRANSPORTATION, INC., *in personam*; STUART DOUGLAS REEVES, *in personam*; and CONGAREE RIVER SERVICES, LLC, *in personam,*<br><br>*Defendants.* | 2:25-cv-02074-DCN<br><br>CIVIL ACTION NO. _____<br><br>IN ADMIRALTY,<br>F.R.C.P. 9(h) AND RULE C |

## <u>VERIFIED COMPLAINT</u>

Plaintiff, DCC Green River, LLC ("DCC"), as assignee of Synovus Bank, files this Verified Complaint seeking recognition and foreclosure of preferred ship mortgages under 46 U.S.C. § 31325(b), on the M/V STARFLEET GUARDIAN, Official No. 1257515 (the "Guardian"), the M/V STARFLEET VIKING, Official No. 1219235 (the "Viking"), and the M/V STARFLEET PATRIOT, Official No. 1123380 (the "Patriot"; together with the Guardian and the Viking, the "Vessels"), and judgment *in personam* against Starfleet Marine Transportation, Inc. ("Starfleet"), Stuart Douglas Reeves ("Reeves"), and Congaree River Services, LLC ("Congaree"). In support of this Verified Complaint, DCC represents as follows:

## INTRODUCTORY STATEMENT

1. Starfleet and Reeves have failed to repay loans, originally made by DCC's predecessor-in-interest. The loans are secured by preferred mortgages on the Vessels and UCC-1 financing statements on all assets of Starfleet. Congaree is the recipient of two fraudulent transfers from Starfleet, which sought to conceal certain assets from DCC and to prevent DCC from executing on its other collateral. DCC brings this suit to enforce its liens against the Vessels, as well as to obtain monetary damages against Starfleet, Reeves, and Congaree. This action is being brought in South Carolina as South Carolina is the appropriate venue for appointment of a receiver for Starfleet, which is located in this jurisdiction. Appointment of a receiver is necessary to preserve DCC's collateral, including the Vessels. To the extent that DCC needs to pursue its remedies against the Vessels *in rem* in another District, it intends to commence multi-district litigation in the appropriate location at a later date.

## THE PARTIES

2. DCC is a limited liability company duly organized under the laws of the State of Delaware.

3. Upon information and belief, Starfleet is a corporation duly incorporated under the laws of the State of South Carolina and doing business in the State of South Carolina and within the jurisdiction of this Court.

4. Starfleet owns and operates the Vessels.

5. Upon information and belief, Reeves is an individual residing in the State of South Carolina and within the jurisdiction of this Court.

6.     Upon information and belief, Congaree is a limited liability company duly organized under the laws of the State of South Carolina and doing business in the State of South Carolina and within the jurisdiction of this Court.

7.     This is an action against Starfleet, *in personam*, as the mortgagor, against Reeves, *in personam*, as a guarantor of Starfleet's debt, against Congaree, *in personam*, as the recipient of certain fraudulent transfers from Starfleet, and against the Vessels, their engines, tackle, apparel, boilers, equipment and appurtenances, etc., *in rem*, to recognize the Preferred Ship Mortgages and maritime liens over the Vessels in favor of DCC.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction in this action pursuant to 28 U.S.C. § 1333(1) in that this action is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and the Supplemental Rules for Certain Admiralty and Maritime Claims.

9.     This Court also has subject matter jurisdiction pursuant to 46 U.S.C. § 31325(b) as this action seeks to enforce a preferred mortgage lien in a civil action *in rem* against documented vessels and a claim *in personam* in admiralty against the mortgagor, maker, comaker, and guarantor for an amount of outstanding indebtedness secured by mortgaged vessels.

10.     This Court has supplemental jurisdiction over DCC's related claims arising under the relevant state laws pursuant to 28 U.S.C. § 1367(a) and Article III, Section 2 of the United States Constitution.  DCC's supplemental state-law claims are so closely related to their federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

11.     Venue is proper in this district because, upon information and belief, the Vessels are now or will, during the pendency of this lawsuit be, upon the navigable waters of Louisiana, Florida or within this district and within the jurisdiction of this Court, as required by 28 U.S.C. §1391(b).

## FACTUAL ALLEGATIONS

**The Loan Documents**

12.     On September 8, 2008, Starfleet executed a Promissory Note in the original principal amount of $5,000,000 (the "September 2008 Note") in favor of Synovus Bank, formerly known as Columbus Bank and Trust Company, as successor in interest through name change and by merger with The National Bank of South Carolina and also known as NBSC, a Division of Synovus Bank (hereinafter, "Synovus Bank").

13.     To secure all obligations, debts and liabilities of Starfleet to Synovous Bank, including but not limited to the payment of all sums due under the September 2008 Note, as amended from time to time, Starfleet, as mortgagor, duly executed and delivered to Synovous Bank, as mortgagee, a Preferred Ship Mortgage, dated as July 7, 2009, on the Viking, her engines, tackle, apparel, etc., up to a maximum principal amount of $5,000,000.00, all as more fully described therein.  A copy of the preferred ship mortgage recorded on the Viking (as amended, the "First Viking Ship Mortgage") is attached hereto as **Exhibit A** and incorporated herein by reference.

14.     The First Viking Ship Mortgage was received for recordation by the U.S. Coast Guard at its National Vessel Documentation Center, on or about July 8, 2009, and recorded in Batch Number 699762, Doc ID 10701741.  Recordation of the First Viking Ship Mortgage is

evidenced in the abstract of title (the "Viking Abstract of Title") issued as of January 10, 2025, attached hereto as **Exhibit B**.

15.     All of the acts and things required to be done by 46 U.S.C. § 31322, in order to give the First Viking Ship Mortgage the status of a first preferred ship mortgage, were done or caused to be done, by Synovous Bank or by the U.S. Coast Guard.

16.     To secure all obligations, debts and liabilities of Starfleet to Synovous Bank, including but not limited to the payment of all sums due under the September 2008 Note, as amended from time to time, Starfleet, as mortgagor, duly executed and delivered to Synovous Bank, as mortgagee, a Preferred Ship Mortgage, dated as November 22, 2011, on the Patriot, her engines, tackle, apparel, etc., up to a maximum principal amount of $1,177,481.00, all as more fully described therein.   A copy of the preferred ship mortgage recorded on the Patriot (as amended, the "First Patriot Ship Mortgage") is attached hereto as **Exhibit C** and incorporated herein by reference.

17.     The First Patriot Ship Mortgage was received for recordation by the U.S. Coast Guard at its National Vessel Documentation Center, on or about November 23, 2011, and recorded in Batch Number 836351, Doc ID 1440299.   Recordation of the First Patriot Ship Mortgage is evidenced in the abstract of title (the "Patriot Abstract of Title") issued as of January 10, 2025, attached hereto as **Exhibit D**.

18.     All of the acts and things required to be done by 46 U.S.C. § 31322, in order to give the First Patriot Ship Mortgage the status of a first preferred ship mortgage, were done or caused to be done, by Synovous Bank or by the U.S. Coast Guard.

19.    On September 25, 2013, Starfleet and Synovous Bank, entered into a Loan and Master Security Agreement and related agreements and documents that established a commercial loan from Synovous to Starfleet (the "Loan").

20.    In connection with the Loan, Starfleet executed a Promissory Note in the original principal amount of up to $6,800,000.00 ("Original Note") in favor of Synovous Bank.

21.    During the course of the Loan, Starfleet executed additional promissory notes (together with the Original Note, the "Notes") in favor of Synovous Bank, described as follows:

a.    September 15, 2014 Universal Note and Security Agreement from Starfleet, payable to Synovous Bank, in the principal amount of $2,851,575.59, as amended and modified;

b.    May 28, 2015 Universal Note and Security Agreement from Starfleet payable to Synovous Bank, dated May 28, 2015 in the original principal amount of $6,800,000.00, as amended;

c.    September 10, 2015 Renewal Promissory Note from Starfleet payable to Synovous Bank, in the original principal amount of $2,029,978.67, as amended and modified;

d.    May 1, 2017 Amended and Restated Promissory Note from Starfleet payable to Synovus Bank, in the original principal amount of $500,000.00, as amended;

e.    November 5, 2018 Promissory Note from Starfleet payable to Synovus Bank, dated in the original principal amount of $31,574.88, as amended;

f.    November 5, 2018 Promissory Note from Starfleet payable to Synovus Bank in the original principal amount of $45,784.30, as amended;

g.  February 5, 2021 Promissory Note (Deferred Interest) from Starfleet payable to Synovus Bank in the original principal amount of $121,923.04, as amended.

22.  To secure all obligations, debts and liabilities of Starfleet to Synovous Bank, including but not limited to the payment of all sums due under the Loan, as amended from time to time, and the Notes, Starfleet, as mortgagor, duly executed and delivered to Synovous Bank, as mortgagee, a second Preferred Ship Mortgage, dated as September 25, 2013, on the Viking, her engines, tackle, apparel, etc., up to a maximum principal amount of $6,800,000.00, all as more fully described therein.  A copy of the second preferred ship mortgage recorded on the Viking in favor of Synovous Bank (as amended, the "Second Viking Ship Mortgage") is attached hereto as **Exhibit E** and incorporated herein by reference.

23.  The Second Viking Ship Mortgage was received for recordation by the U.S. Coast Guard at its National Vessel Documentation Center, on or about September 27, 2013, and recorded in Batch Number 14791700, Doc ID 3.  Recordation of the Second Viking Ship Mortgage is evidenced in Viking Abstract of Title.

24.  All of the acts and things required to be done by 46 U.S.C. § 31322, in order to give the Second Viking Ship Mortgage the status of a first preferred ship mortgage, were done or caused to be done, by Synovous Bank or by the U.S. Coast Guard.

25.  To secure all obligations, debts and liabilities of Starfleet to Synovous Bank, including but not limited to the payment of all sums due under the Loan, as amended from time to time, and the Notes, Starfleet, as mortgagor, duly executed and delivered to Synovous Bank, as mortgagee, a second Preferred Ship Mortgage, dated as September 25, 2013, on the Patriot, her engines, tackle, apparel, etc., up to a maximum principal amount of $6,800,000.00, all as more fully described therein.  A copy of the second preferred ship mortgage recorded on the

Patriot in favor of Synovous Bank (as amended, the "Second Patriot Ship Mortgage") is attached hereto as **Exhibit F** and incorporated herein by reference.

26.     The Second Patriot Ship Mortgage was received for recordation by the U.S. Coast Guard at its National Vessel Documentation Center, on or about September 27, 2013, and recorded in Batch Number 14797200, Doc ID 3.   Recordation of the Second Patriot Ship Mortgage is evidenced in Viking Abstract of Title.

27.     All of the acts and things required to be done by 46 U.S.C. § 31322, in order to give the Second Patriot Ship Mortgage the status of a first preferred ship mortgage, were done or caused to be done, by Synovous Bank or by the U.S. Coast Guard.

28.     To secure all obligations, debts and liabilities of Starfleet to Synovous Bank, including but not limited to the payment of all sums due under the Loan, as amended from time to time, and the Notes, as amended from time to time, Starfleet, as mortgagor, duly executed and delivered to Synovous Bank, as mortgagee, a Preferred Ship Mortgage, dated as October 23, 2015, on the Guardian, her engines, tackle, apparel, etc., up to a maximum principal amount of $6,800,000.00, all as more fully described therein.   A copy of the preferred ship mortgage recorded on the Guardian (the "Guardian Ship Mortgage"; together with the First Viking Ship Mortgage, the Second Viking Ship Mortgage, the First Patriot Ship Mortgage, and the Second Patriot Ship Mortgage, the "Ship Mortgages") is attached hereto as **Exhibit G** and incorporated herein by reference.

29.     The Guardian Ship Mortgage was received for recordation by the U.S. Coast Guard at its National Vessel Documentation Center, on or about October 29, 2015, and recorded in Batch Number 31615800, Doc ID 4.  Recordation of the Guardian Ship Mortgage is evidenced

in the abstract of title (the "Guardian Abstract of Title") issued as of January 10, 2025, attached hereto as **Exhibit H**.

30.    All of the acts and things required to be done by 46 U.S.C. § 31322, in order to give the Guardian Ship Mortgage the status of a first preferred ship mortgage, were done or caused to be done, by Synovous Bank or by the U.S. Coast Guard.

31.    To secure all obligations, debts and liabilities of Starfleet to Synovous Bank, including but not limited to the payment of all sums due under the Loan, as amended from time to time, and the Notes, as amended from time to time, Starfleet, as debtor, duly executed and delivered to Synovous Bank, as lender, a series of security agreements (collectively, the "Security Agreements"), described as follows:

a.    August 3, 2009 Commercial Security Agreement from Starfleet in favor of Synovus Bank;

b.    November 22, 2011 Commercial Security Agreement from Starfleet in favor of Synovus Bank;

c.    February 29, 2016 Security Agreement (the "2016 Security Agreement") from Starfleet in favor of Synovus Bank;

d.    May 1, 2017 Amended and Restated Security Agreement from Starfleet in favor of Synovus Bank.

32.    Pursuant to the terms of the 2016 Security Agreement, Starfleet granted a security interest in all of its assets (collectively, the "Collateral") to Synovous Bank.  A copy of the 2016 Security Agreement is attached hereto as **Exhibit I**.

33.    Synovous Bank perfected its security interest in the Collateral by filing, among other UCC filings, UCC Financing Statement No. 160229-1213375 (as amended, the "All Assets

Financing Statement") with the South Carolina Secretary of State, February 29, 2016. A copy of the All Assets Financing Statement is attached hereto as **Exhibit J**.

34. The All Assets Filing was continued on October 27, 2020, by the filing of UCC Financing Statement Amendment No. 201103-1419314 recorded in the aforesaid records. The All Assets Financing Statement was amended on November 1, 2020, to change the name of the secured party by the filing of UCC Financing Statement Amendment No. 201027-1251502 recorded in the aforesaid records.

35. To secure all obligations, debts and liabilities of Starfleet to Synovus Bank, including but not limited to the payment of all sums due under the Loan, as amended from time to time, and the Notes, as amended from time to time, Reeves, as guarantor, duly executed and delivered to Synovous Bank, as lender, a series of guaranties (collectively, the "Guaranties"), described as follows:

    a.     August 3, 2009 Guaranty from Reeves in favor of Synovus Bank;

    b.     November 22, 2011 Guaranty of Reeves in favor of Synovus Bank;

    c.     July 20, 2012 Guaranty of Reeves in favor of Synovus Bank;

    d.     September 25, 2013 Guaranty Agreement from Reeves in favor of Synovus Bank;

    e.     September 15, 2014 Guaranty from Reeves in favor of Synovus Bank;

    f.     May 28, 2015 Guaranty of Reeves in favor of NBSC, a division of Synovus Bank;

    g.     September 10, 2015 Guaranty Agreement from Reeves in favor of Synovus Bank;

    h.     May 1, 2017 Amended and Restated Guaranty Agreement from Reeves in favor of Synovus Bank

36. The Notes, the Ship Mortgages, the Security Agreements, and the Guaranties, together with additional loan agreements, security agreements, and other agreements and

documents executed in connection with said Loan and all obligations, debts and liability of Starfleet to Synovus Bank owed from Starfleet to Synovous Bank during the period from 2009 through 2022, are collectively referred to as the "Loan Documents."

37.     Starfleet amended the Ship Mortgages from time to time to secure all obligations, debts and liability of Starfleet to Synovus Bank under the Loan Documents. The various amendments to the Ship Mortgages were received for recordation by the U.S. Coast Guard at its National Vessel Documentation Center. The Viking Abstract of Title, the Patriot Abstract of Title, and the Patriot Abstract of Title evidence recordation.

**Assignment of the Loan Documents to DCC, Loan Modification Agreement, Loan Extension Agreement, and Default**

38.      On July 25, 2022, DCC acquired the debt associated with the Loan Documents, resulting in the assignment of the Loan Documents, including the Ship Mortgages and All Assets Financing Statement, to DCC.  The assignments of the Ship Mortgages are attached collectively hereto as **Exhibit K**.

39.     The All Assets Financing Statement was assigned to DCC by the filing of UCC Financing Statement Amendment No. 220729-1301455, (the "Assignment Amendment") recorded with the South Carolina Secretary of State on July 29, 2022.  A copy of the Assignment Amendment is attached hereto as **Exhibit L**.

40.     Starfleet and Reeves are indebted to DCC under the Loan Documents.

41.     The Ship Mortgages secure all obligations, debts, and liabilities of Starfleet to DCC, including but not limited to the payment of all sums due under the Loan Documents.

42.     Under the Loan Documents and the All Assets Financing Statement, DCC holds a security interest in the Collateral to secure all obligations, debts, and liabilities of Starfleet to DCC.

43.     Under the Loan Documents, the failure to make payment when due constitutes an event of default.

44.     On December 8, 2022, Starfleet, Reeves, and DCC entered into a Loan Modification Agreement with respect to the Loan Documents (the "Loan Modification Agreement").  A copy of the Loan Extension Agreement is attached hereto as **Exhibit M**.

45.     On January 1, 2024, Starfleet, Reeves, and DCC entered into a Loan Extension Agreement (the "Loan Extension Agreement") whereby Starfleet, Reeves, and DCC (a) affirmed that Starfleet's and Reeves's debt under the Loan Documents was $10,089,968.72, and (b) agreed to extend the maturity date of the Loan Documents and associated debt to June 30, 2024. A copy of the Loan Extension Agreement is attached hereto as **Exhibit N**.

46.     Starfleet ceased making payments due and owed in accordance with the Loan Documents and the Loan Extension Agreement, which are both secured by the Ship Mortgages. On April 1, 2024, DCC sent a notice of intent and reservation of rights to Starfleet, a copy of which is attached hereto as **Exhibit O**.

47.     Despite multiple amicable demands, Starfleet's defaults under the Loan Documents have not been paid cured.

48.     In the event of a default, the Loan Documents provide for the recovery of the unpaid principal balance then outstanding, plus accrued interest, together with the reasonable attorneys' fees, costs, expenses and other fees and charges as provided in the Loan Documents.

49.     In the event of a default, pursuant to the terms of the Loan Documents and the Loan Extension Agreement, Starfleet consented to the appointment of a receiver.

50.     As of February 20, 2025, Starfleet owed DCC $11,207,134.96, plus additional interest, costs, legal fees, and other fees and charges incurred after February 20, 2025 as provided in the Loan Documents (the "Indebtedness").  The amounts due and owing continue to accrue daily.  Because Starfleet failed and fails to make payments due prior to maturity and payment in full upon maturity pursuant to the Loan Documents, the Indebtedness is immediately due and payable.

51.     Default under the Loan Documents, as specified above, constitutes an event of default under the Ship Mortgages entitling DCC to exercises its rights thereunder.

52.     Upon information and belief, the two Vessels are currently located or will be located in the State of Louisiana, as the Vessels each call upon Port Fourchon, Louisiana. The third vessel, the Patriot, is located in the State of Florida.  DCC intends to begin multi-district litigation in Louisiana against the Vessels at such time as it decides to arrest the Vessels.

**Fraudulent Transfers of Miss Linda Lee and Wateree**

53.     From June 6, 2008, through April 3, 2023, Starfleet was the owner of and the M/V MISS LINDA LEE, Official No. 120835 (the "Miss Linda Lee").  Starfleet's ownership of the Linda Lee is evidenced in the abstract of title (the "Miss Linda Lee Abstract of Title") issued as of January 10, 2025, attached hereto as **Exhibit P**.

54.      From October 12, 2012, through April 3, 2023, Starfleet was the owner of the M/V WATEREE, Official No. 976496 (the "Wateree").  Starfleet's ownership of the Linda Lee

is evidenced in the abstract of title (the "Wateree Abstract of Title") issued as of January 10, 2025, attached hereto as **Exhibit Q**.

55.     Starfleet was the owner of the Miss Linda Lee and the Wateree at the time it entered into the 2016 Security Agreement.  Accordingly, the Miss Linda Lee and the Wateree were a part of DCC's Collateral.

56.     On April 3, 2023, Starfleet sold the Miss Linda Lee to Congaree (the "First Miss Linda Lee Transfer").  As indicated in the Miss Linda Lee Abstract of Title, the consideration for the Miss Linda Lee was $1.00.

57.     On April 3, 2023, Starfleet sold the Wateree to Congaree (the "Wateree Transfer").  As indicated in the Wateree Abstract of Title, the consideration for the Wateree was $1.00.

58.     On August 23, 2023, Congaree sold the Miss Linda Lee to Cornelius Offshore S DE RL DE CV (the "Second Miss Linda Lee Transfer"; together with the First Miss Linda Lee Transfer, the "Transfers").

59.     Upon information and belief, Congaree is controlled by Reeves

60.     Upon information and belief, the Transfers were made without fair consideration.

61.     In an asset report (balance sheet) provided by Starfleet to DCC dated September 30, 2023, Starfleet listed the Miss Linda Lee and the Wateree as assets, despite the asset report being prepared after the First Miss Linda Lee Transfer and the Wateree Transfer.

62.     Upon information and belief, the Transfers were orchestrated by Reeves seeking to transfer valuable Collateral to an affiliate and outside DCC's reach to avoid payment of the amount owed by Starfleet and Reeves under the Loan Documents.

63.     Upon information and belief, the Transfers rendered Starfleet insolvent.

64.    DCC brings this action *in personam* against Starfleet, Reeves, and Congaree and *in rem* against the Vessels for all amounts of outstanding indebtedness secured by mortgaged Vessels and to exercise DCC's rights under the Ship Mortgages and the Loan Documents.  This action is being brought in this District because Starfleet is a South Carolina corporation and its principal place of business is in South Carolina.  Accordingly, this is the appropriate venue for purse DCC's *in personam* claims against Starfleet and appointment of a receiver for Starfleet.

### COUNT I
### (Recognition and Enforcement of the Ship Mortgages)

65.    DCC re-alleges and re-avers each of the allegations contained in Paragraphs 1 through 64, as if full set forth herein.

66.    DCC is the holder and owner of the Loan Documents and the Ship Mortgages and has the right to enforce and collect the obligations evidenced by the Loan Documents and to enforce the Ship Mortgages, in accordance with 46 U.S.C. § 31325.

67.    Because Starfleet has defaulted under the Loan Documents, constituting an event of default under the Ship Mortgages as specified above, DCC is entitled to have the liens and encumbrances of the Ship Mortgages recognized and enforced as valid Preferred Ship Mortgages against the Vessels and for such other legal and equitable relief as is just and due under admiralty and maritime jurisdiction.

### COUNT II
### (Arrest of the Vessels)

68.    DCC re-alleges and re-avers each of the allegations contained in Paragraphs 1 through 67, as if fully set forth herein.

69.    Pursuant to the United States Code, notice of these proceedings must be given to the owner or master of the Vessels and all persons who have recorded lien(s) with the U.S. Coast

Guard, and DCC requests that the Court order such notification to be made to such persons by certified mail, delivered to their last known address on file with the United States Coast Guard.

70.     An Affidavit by DCC's authorized representative verifying the facts of this Complaint is attached as **Exhibit R**.

71.     DCC agrees to hold harmless and indemnify the U.S. Marshal and all of its deputies from any and all liability as a result of seizing the Vessels.

## COUNT III
### (Breach of the Loan Documents and Loan Extension Agreement – Starfleet)

72.     DCC re-alleges and re-avers each of the allegations contained in Paragraphs 1 through 71, as if fully set forth herein.

73.     In addition to DCC's *in rem* claims against the Vessels, pursuant to 46 U.S.C. § 31325(b)(2), DCC is entitled to the amount of outstanding Indebtedness and for full payment of that Indebtedness from Starfleet as mortgagor.

74.     Starfleet has breached the Loan Documents and the Loan Extension Agreement by failing to make payments when and as due.  Accordingly, DCC is entitled to a judgment in the amount of the outstanding Indebtedness against Starfleet.

75.     DCC's economic injury increases so long as the Indebtedness owed by the Starfleet and Reeves remains unpaid.

## COUNT IV
### (Breach of the Loan Documents and Loan Extension Agreement – Reeves)

76.     DCC re-alleges and re-avers each of the allegations contained in Paragraphs 1 through 75, as if fully set forth herein.

77.     In addition to DCC's *in rem* claims against the Vessels, pursuant to 46 U.S.C. § 31325(b)(2), DCC is entitled to the amount of outstanding Indebtedness and for full payment of that indebtedness from Reeves as guarantor.

78.     Reeves has breached the Loan Documents, including but not limited to the Guaranties, and the Loan Extension Agreement by failing to make payments when and as due. Accordingly, DCC is entitled to a judgment in the amount of the outstanding Indebtedness against Reeves.

79.     DCC's economic injury increases so long as the Indebtedness owed by the Starfleet and Reeves remains unpaid.

## COUNT V
### (Appointment of a Receiver – Starfleet)

80.     DCC re-alleges and re-avers each of the allegations contained in Paragraphs 1 through 79, as if fully set forth herein.

81.     The appointment of a receiver for Starfleet is necessary to preserve and manage the Vessels, and to collect the rents and profits therefrom during the pendency of this action.

82.     This Court is empowered to appoint a receiver to operate the Vessels pursuant to 46 U.S.C. § 31325(e)(1).

83.     Absent the granting of the relief requested in this Complaint, the Vessels remains at risk of damage or loss, and neither Starfleet nor DCC will be able to maximize the value of the Vessels in a controlled, orderly fashion.

84.     DCC's interests in the Vessels will be irreparably harmed if a receiver is not appointed to take control of and to manage Starfleet and collect the rents and profits therefrom.

85.    Starfleet consented in writing to the appointment of a receiver, upon the occurrence and during the continuation of an event of default under the Loan Documents and/or the Loan Extension Agreement.

86.    As a matter of enforcement of the Documents and the Loan Extension Agreement, DCC is entitled to the appointment of a receiver.

87.    By reason of the foregoing, DCC is suffering and will continue to suffer immediate and irreparable injury, loss, and damage unless a receiver is appointed in this case.

88.    The appointment of a receiver is necessary to preserve, protect, and maintain the value of DCC's secured interests in the Vessels.

89.    The Vessels and the rents and proceeds therefrom constitute funds in litigation, and the rights of DCC cannot be fully protected without the appointment of a receiver as requested herein.

90.    There is an imminent and foreseeable danger of harm to the Vessels, thereby authorizing the intervention of equity to appoint a receiver to take possession and control of same.

91.    The Vessels securing DCC's claims constitute assets charged with the payment of debts where there is manifest danger of loss, destruction, or diminution in value thereof.

92.    Appointment of a receiver in this case is consistent with Rule 66 of the Federal Rules of Civil Procedure, 28 U.S.C. § 959, and applicable law.

93.    DCC is entitled to the immediate appointment of a receiver having the powers, privileges, immunities and duties substantially as set forth in the draft proposed form of order attached as **Exhibit S** (the "Proposed Order").

## COUNT VI
### (Injunction in Aid of Receivership – Starfleet)

94.     DCC re-alleges and re-avers each of the allegations contained in Paragraphs 1 through 93, as if fully set forth herein.

95.     DCC has no adequate remedy at law and is in danger of suffering irreparable harm and injury as a result of imminent damage to or loss of the Vessels.

96.     DCC is likely to succeed on the merits in this action.

97.     In connection with the requested appointment of a receiver, it is necessary and appropriate for the Court to enter an order imposing an injunction in aid of the receiver fulfilling the receiver's duties as set forth in the Proposed Order.  Such relief is necessary to the implementation of the Proposed Order and the protection and preservation of the Vessels.

## COUNT VI
### (Fraudulent Transfer – Congaree)

98.     DCC re-alleges and re-avers each of the allegations contained in Paragraphs 1 through 97, as if fully set forth herein.

99.     The Transfers from Starfleet to Congaree of the Miss Linda Lee and the Wateree were made with actual intent to hinder, delay or defraud DCC as creditor of Starfleet

100.     Alternatively, the Transfers from Starfleet to Congaree of the Miss Linda Lee and the Wateree were made without receipt by Starfleet of reasonably equivalent value and Starfleet made the Transfers with the reasonable belief that it was about to incur debts, including judgment entered in this action, beyond its ability to pay.

101.     Pursuant to the Parol, Fraudulent, and Other Void Gifts or Conveyances Act, S.C. Code. §§ 27-23-10 *et seq.*, DCC is entitled to a judgment against Congaree to the extent

necessary to satisfy the Indebtedness in favor of DCC, so that the claim against Starfleet can be paid.

**REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff, DCC Green River, LLC respectfully requests:

1.      That process *in rem* pursuant to Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure issue against the M/V STARFLEET GUARDIAN, bearing Official No. 1257515, her engines, tackle, apparel, boilers, equipment and appurtenances, etc., *in rem,* and that all persons having or claiming any interest therein be cited to appear in and answer, under oath, all and singular the matters aforesaid, that the Guardian Ship Mortgage in favor of DCC, as Assignee of Synovus Bank, be declared to be a valid and subsisting lien upon the said M/V STARFLEET GUARDIAN, engines, tackle, apparel, boilers, equipment and appurtenances, etc., *in rem,* and that the said M/V STARFLEET GUARDIAN be seized and sold to satisfy amounts owed to DCC, as Assignee of Synovus Bank, as set forth herein;

2.      For judgment *in rem* against the M/V STARFLEET GUARDIAN, as provided by 46 U.S.C. §31326, in the full amount due as set forth herein, including prejudgment interest, costs, expenses and attorneys' fees;

3.      That process *in rem* pursuant to Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure issue against the M/V STARFLEET VIKING, Official Number 1219235, her engines, tackle, apparel, boilers, equipment and appurtenances, etc., *in rem,* and that all persons having or claiming any interest therein be cited to appear in and answer, under oath, all and singular the matters aforesaid, that the First Viking Ship Mortgage and Second Viking Ship Mortgage in favor of DCC, as Assignee

of Synovus Bank, be declared to be a valid and subsisting lien upon the said M/V Viking, engines, tackle, apparel, boilers, equipment and appurtenances, etc., *in rem,* and that the said M/V Viking be seized and sold to satisfy amounts owed to DCC, as Assignee of Synovus Bank, as set forth herein;

4.     For judgment *in rem* against the M/V Viking, as provided by 46 U.S.C. § 31326, in the full amount due as set forth herein, including prejudgment interest, costs, expenses and attorneys' fees;

5.     That any property attached in this proceeding be sold under the direction of this Court, and that the proceeds of the sale be deposited with the Court to satisfy amounts owed to DCC Green River, LLC;

6.     That notice of these proceedings be given to the owner or master of the M/V STARFLEET GUARDIAN, the M/V STARFLEET VIKING, and the M/V STARFLEET PATRIOT and all persons who have recorded lien(s) with the U.S. Coast Guard by certified mail, delivered to their last known address on file with the U.S. Coast Guard;

7.     That this Court appoint a receiver by entering the Proposed Order;

8.     That this Court issue a final judgment *in personam* against Defendant Starfleet Marine Transportation, Inc. in the full amount of the Indebtedness as set forth herein, including prejudgment interest, costs, expenses and attorneys' fees;

9.     That this Court issue a final judgment *in personam* against Defendant Stuart Douglas Reeves in the full amount of the Indebtedness as set forth herein, including prejudgment interest, costs, expenses and attorneys' fees;

10.     That this Court issue a final judgment *in personam* against Defendant Congaree River Services, LLC, in the amount due to satisfy the claim of DCC, or, alternatively, to set aside

any and all conveyances proven at trial to be fraudulent, including the conveyances of the M/V

LINDA LEE and the M/V WATEREE from Starfleet to DCC, so that the property can be sold

and DCC's debts satisfied; and

      11.    That this Court grant DCC Green River, LLC, such other and further relief which

it may deem just and proper.

Dated: March 18, 2025

                              Respectfully submitted,

                        By:    /s/Nicholas C. C. Stewart
                                  Nicholas C. C. Stewart (Fed. Id 12359)
                                  Burr &Forman
                                  100 Calhoun Street, Suite 400
                                  Charleston, South Carolina 29401
                                  nstewart@burr.com

                                  ***Attorneys for Plaintiff, DCC Green River, LLC***

VERIFICATION

      I, Justin Ranney, the authorized person of DCC Green River, LLC verify under penalty of perjury that the allegations set forth in the foregoing Verified Complaint are true and correct to the best of my knowledge, information, and belief.

      /s/ Justin Ranney
      Justin Ranney